UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR15-5430 BHS |
| Plaintiff, | ) ) | MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO |
| v. | ) ) | SUPPRESS EVIDENCE |
| DARREL J. DWIGHT, | ) ) | **Noted: March 11, 2016** |
| Defendant. | ) ) | *Oral Argument Requested* |
| | ) | |

## I.  MOTION

Darrel Dwight, through his attorneys Miriam Schwartz and Colin Fieman, respectfully moves this Court for an Order suppressing all evidence seized pursuant to a search warrant executed at Mr. Dwight's home on December 14, 2014, including all fruits of the search and any subsequent statements made by him.  This motion is based upon the Fourth Amendment to the United States Constitution and the legal authorities set forth in the memorandum.

## II.  STATEMENT OF FACTS

Mr. Dwight is 54 years old and has never before been accused of a crime.  The defense has provided the Government with two comprehensive psychosexual evaluations by state certified experts (the second done, at the Government's request, to confirm the results of the first), both of whom concluded that Mr. Dwight has no history of "hands on" offenses and that he does not pose a risk to the community.  Mr. Dwight was released on bond over a year ago and has maintained full compliance with the terms and conditions of his release.

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 1

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

The search of Mr. Dwight's home was undertaken pursuant to a warrant issued by Magistrate Judge J. Richard Creatura on December 23, 2014. *See* exh. A (warrant and supporting affidavit). While the affidavit in support of the warrant is 28 pages long, much of it consists of boilerplate definitions and background information about computers and digital evidence. The facts relevant to probable cause revolve around Mr. Dwight's alleged activities in connection with a Canadian film distribution company identified as the "Toronto Company," and two websites, identified in the affidavit as "Website A" and "Website B."

A. **The "Toronto Company"**

According to the affidavit, the "Toronto Company" sold "naturist" DVDs and streaming videos. Exh. A at ¶ 16. The affidavit presents various facts regarding the investigation of the Toronto Company for possible violation of Canadian child pornography laws, but it does not claim that the site advertised or marketed itself as a distributor of child pornography. To the contrary, the affidavit includes a description of one of the company's films that was posted on its website, which advertised the content as "nudist food fighting." *Id.* at ¶ 17. The affidavit then goes on to describe the actual content of the advertised film, which includes nude minors and some bizarre behavior involving food. *Id.* at ¶18. The content that is emphasized in the affidavit, however, was not included in the Toronto Company's description of the film and there is no suggestion that the company otherwise advertised itself as a distributor of child pornography.

The affidavit later alleges that between October, 2008, and January, 2009 (six years prior to the issuance of the search warrant at issue here), Mr. Dwight purchased five movies on two occasions from the Toronto Company. The affidavit does not include a description of how these films were advertised on the company's website, nor

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

does it claim that the titles of the films (such as "Boys Fight XIX" and "Vladik Anthology") were suggestive of child pornography. *See* exh. A at ¶¶ 29-32.

Instead, the affidavit describes select moments in one movie (with a total running time of one hour and fourteen minutes) consisting of a "series of videos of clothed or nude minor boys playing at the beach, riding bicycles, showering, playing in and around a pool, or dancing." *Id*. at ¶ 32. According to the affidavit, several scenes in this "naturist" movie show nude boys with their genitals "displayed" or include shots that briefly "focus" on a boy's "genital area." *Id*. While the affidavit goes on to assert that the films purchased by Mr. Dwight in 2008 and 2009 were "child pornography," it does not describe any content that amounts to explicit child pornography, nor does it claim that the films meet the definition of "lascivious" pornography under 18 U.S.C. § § 2256(2)(A)(v).

More importantly, the affiant does not claim that any of the films were promoted or advertised as child pornography, nor does she claim that buyers had an opportunity to preview the movies or otherwise learn that they contained anything other than "naturist" material before purchasing them.

**B.     "Website A"**

Somewhat confusingly in terms of its presentation of the facts, the affidavit also includes a lengthy description of a photo-sharing website referred to as "Website A." According to the affidavit, the site contains a wide variety of harmless forums organized according to a broad range of topics. "Examples include topics such as 'architecture,' 'travel,' 'family,' and 'autos.'" Exh. A at ¶ 22. The site, which is known to the defense, in no way advertises itself as a pornography site and is similar in appearance and most of its content to other perfectly legal sites. The site also contains, however, "'nudity' and 'kids' forums" where some users can connect with "like-minded individuals" to trade child pornography. Exh. A at ¶ 26. Although the affidavit

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 3

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

offers an elaborate explanation of how some site users can do that, it never suggests that Mr. Dwight was involved in such activities. *See* exh. A at ¶¶ 22-28. Nor does the affidavit suggest that Mr. Dwight ever visited the "nudity" or "kids" forums; posted illicit pictures; communicated with anyone who was trading child pornography; or actually did anything at all in connection with "Website A." Instead, the affidavit merely asserts that Mr. Dwight was a member of the site at some unknown time. Exh. A at ¶ 33.

### C. "Website B"

Paragraphs 36 - 39 of the affidavit describe an undercover operation by the United States Postal Inspection Service (USPIS). As part of this operation, investigators sent emails to previous customers of the Toronto Company stating that they had created a new website containing videos of very young boys and girls "playing naughty." Exh. A at ¶ 36. The email also stated that "Website B" "contains all minors and no adults to include 'some soft and hardcore.'" *Id.* Mr. Dwight was the target of one of these USPIS solicitations in December, 2014, and the affidavit alleges that he responded by creating a user account on "Website B" and then "attempted" to download 19 movies from the site, some of which were offered with titles or descriptions that clearly amounted to child pornography. *Id.* at ¶ 38.

The affidavit also sets forth facts linking the attempted download to Mr. Dwight and his residence.

### D. "Characteristics" of Certain Individuals

Finally, the application contains a boilerplate section describing the "Characteristics Common To Individuals Involved In The Receipt And Attempted Receipt Of Child Pornography." Exh. A at ¶¶ 47 – 53. Paragraph 54 then asserts that, based on his purchases from the Toronto Company, his "involvement as a director of child care" and with a local boy scout group, and his attempted purchases from

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

"Website B," Mr. Dwight "likely displays characteristics common to individuals involved in the receipt or attempted receipt of child pornography." Notably, none of the boilerplate language contends that an individual who has attempted to download child pornography on a single occasion is likely to have done so on other occasions.

The warrant to search Mr. Dwight's home was executed on December 14, 2014. Mr. Dwight's personal computer and various other items were seized by USPIS agents, and he was arrested and questioned by postal inspectors and local police officers. The discovery indicates that Mr. Dwight acknowledged possessing child pornography, but denied sharing or distributing any illicit pictures or videos.

### III. THE AFFIDAVIT FOR THE SEARCH WARRANT DID NOT ESTABLISH PROBABLE CAUSE TO SEARCH MR. DWIGHT'S HOME.

The warrant affidavit, when carefully reviewed by this Court, fails to establish "a fair probability that contraband or evidence of a crime" would be found at Mr. Dwight's residence." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). Indeed, the warrant application in this case bears striking similarities to the warrant found insufficient to support probable cause in *United States v. Weber,* 923 F.2d 1338 (9th Cir, 1991), which is discussed in detail below.

In this case, the affidavit essentially presents a three-legged stool to support a finding of probable cause, with the Toronto Company allegations comprising one of the legs and the facts related to "Website A" and "Website B" the other two. Each of these legs is defective and fractured and, when examined closely, the entire stool collapses.

First, Mr. Dwight's purchase of "naturist" films from the Toronto Company in 2008 and 2009 is stale information that adds little, if anything, to the probable cause analysis. This is because there is no probable cause to believe that Mr. Dwight purchased (or at least intentionally purchased) child pornography from Canada. The films he bought six years earlier were advertised as "naturist" films; there was nothing

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 5

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

obviously illegal in the company's description of the films; and the affidavit fails to establish that the films were in fact child pornography.

More specifically, child pornography is defined in 18 U.S.C. § 2256 as "sexually explicit conduct" involving minors, which includes "lascivious exhibition of the genitals or pubic areas of any person." 18 U.S.C. § 2256(2)(A)(v). None of the acts or content depicted in the films purchased by Mr. Dwight, as described in the affidavit, meet this definition. Determining what amounts to "lascivious exhibition" is never an easy matter, but the Ninth Circuit has established a non-exclusive list of factors that serve as "a starting point" for determining whether a picture or movie meets the definition. *United States v. Overton*, 573 F.3d 679, 686 (9th Cir. 2009) (including, *inter alia,* "whether the focal point of the visual depiction is on the child's genitalia or pubic area.") (citations omitted). The description provided in the affidavit, focusing on a few moments in a movie that lasts an hour and 14 minutes, simply does not permit a reader to conclude that the movie meets the legal definition of child pornography. *See generally United States v. Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006) (photograph described as "a young female (8–10 YOA) naked in a bathtub" is "insufficient to establish probable cause that the photograph lasciviously exhibited the genitals or pubic area"); *United States v. Brunette*, 256 F.3d 14, 17 (1st Cir. 2001) (statement that images showed "'a prepubescent boy lasciviously displaying his genitals'" was a "bare legal assertion, absent any descriptive support and without an independent review of the images, [which] was insufficient to sustain . . . probable cause").

Although attaching the alleged pornography for review by the Magistrate Judge who is asked to issue a warrant is not required, *Battershell*, 457 F.3d at 1052, in this case the affiant not only chose not to include it, but also did not provide a description that supports an ultimate conclusion that these particular naturist films actually

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 6

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

amounted to child pornography. As noted, even the affiant did not assert that the Toronto Company materials ordered by Mr. Dwight involved lascivious exhibition.

Although the affidavit does contain additional information indicating that the Toronto Company was involved with the distribution of child pornography, that is not the issue here. Instead, the issue is whether Mr. Dwight knowingly purchased child pornography from the company six years before the search, and whether his involvement with this company supports the conclusion that he possessed child pornography in December, 2014. Unlike the downloads Mr. Dwight attempted from "Website B" (which is discussed below), there are no facts present in the affidavit showing that he intended to purchase child pornography from the Toronto Company, rather than legal naturist or "child erotica" videos.

The affidavit then devotes several pages to describing how "Website A," the photo-sharing website, is used by *some* of its users to exchange child pornography on *a few* of its many forums. However, no attempt is made to connect Mr. Dwight with any illicit activities on "Website A." It establishes only that Mr. Dwight was a registered user of the site at some unknown time.

Moreover, the affidavit explains that "Website A" has been the subject of law enforcement scrutiny since at least June, 2012, and the illegal activities of various people on the site have been closely tracked by investigators and led to a number of arrests. *See* Exh. A at ¶¶ 22 and 27. Common sense suggests that if Mr. Dwight had done anything illicit on "Website A," those activities would also have been tracked by law enforcement and included in the affidavit. Without such facts, the affidavit's entire discussion of "Website A" is essentially a red herring.

Finally, the affidavit does establish that, on one occasion, Mr. Dwight attempted to download 19 movies from the Government's "Website B," one of which was described on the site as containing child pornography and one of which had a title

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 7

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

suggesting that that it also depicted child pornography. However, stating that Mr. Dwight "*attempted*" to download these movies does not give a reason to believe that these movies would in fact be found on his computer. That is especially the case because "Website B" was controlled by USPIS, which would have known whether a download had actually occurred.

Given these facts (or lack of facts), this case closely resembles *Weber*, in which the Ninth Circuit held that another residential search for child pornography based on a Customs Service sting operation had violated the Fourth Amendment. In *Weber*, customs agents had intercepted a package sent to Weber which contained materials that "*apparently* depict[ed] the sexual exploitation of children." *Id.* at 1340 (emphasis in original). Almost two years later, agents created and sent to Weber another advertisement for pictures that "featured 'boys and girls in sex action.'" *Id.* When he responded to the solicitation by placing an order, agents made a controlled delivery of child pornography to Weber at his home. They then executed a warrant authorizing a search much like the one in the instant case; the warrant authorized not only seizure of the pornography that had been delivered, but also a comprehensive search of the house for additional child pornography.

The Ninth Circuit found the warrant invalid, except for the specific pictures that the agents had delivered immediately before the search. The court rejected the idea that this single receipt of contraband, orchestrated by law enforcement, justified the inference that the defendant had previously received other child pornography. "For example, if it is shown that the occupant of the premises to be searched recently knowingly received two items of stolen property, . . . there is probable cause to search for those two items, but this alone does not establish the suspect's ongoing activities as a fence so as to justify issuance of a warrant authorizing search for other stolen property

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 8

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

as well." 923 F.2d at 1344, *quoting* 2 LaFave, Search and Seizure § 3.7(d). The court also warned against "mechanically reason[ing] that 'some implies more[.]" *Id.*

The court reached this conclusion despite the fact that "apparent" child pornography had previously been intercepted on its way to Weber's house. While acknowledging that a number of inferences that would support probable cause could be drawn from this event, those inferences were too attenuated to support a full blown search of Weber's home. 923 F.2d at 1344-45. The court was particularly concerned about the potential for law enforcement to "justify virtually any search of the home of a person who has once placed an order for child pornography – even if he never receives the materials ordered." *Id*. at 1344. "All the government would have to do is send out phony advertisements for child pornography, wait for responses, and immediately execute warrants to search the houses of those responding affirmatively." *Id*.

Virtually identical Fourth Amendment defects to those that required suppression in *Weber* are present in this case. Mr. Dwight's interest in Canadian naturist films six years prior to the search of his home is no more supportive of probable cause than Mr. Weber's interest in apparent child pornography just 20 months before the search of his residence.

Likewise, Mr. Dwight's response to the USPIS email solicitation in 2014 does not support the conclusion that he possessed a collection of child pornography any more than Weber's response to the customs service solicitation justified such a conclusion in his case.

And, while the Ninth Circuit did approve the seizure of the specific materials that the customs had delivered in *Weber*, in this case there was nothing at all that could properly be seized since (as the warrant affidavit conceded) Mr. Dwight was unable to actually download anything from the USPIS site. It goes virtually without saying that the additional information in the instant affidavit about the photo-sharing site ("Website

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 9

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

A"), which is devoid of any claim that Mr. Dwight did anything that is even suspicious in connection with that site, should make no difference in the Court's comparison of this case to *Weber* or alter the conclusion that the search here was not supported by probable cause. Nor does the boilerplate "characteristics" section of the affidavit make a difference, since a similar "collector profile" was also present in the *Weber* warrant application. *See* 923 F.2d at 1345.

Finally, any appeal by the Government to the "good faith" exception to the exclusionary rule would be unavailing. The *Weber* court not only found the affidavit in that case lacking in probable cause, but so deficient that it failed to meet the test for "good faith." 923 F.2d at 1346. Given that *Weber* is a well-established precedent in this circuit, the deficiencies in the application for a warrant to search Mr. Dwight's home should have been all the more apparent to the affiant here. *See Leon*, 468 U.S. at 922, n. 3 (the "objective standard" for determining whether the good faith exception applies "requires officers to have a reasonable knowledge of what the law prohibits.").

## IV. CONCLUSION

For the reasons stated above, the Court should suppress all evidence seized from Mr. Dwight's home, as well as the any allegedly inculpatory statements and other fruits of the search.

Dated this 3rd day of March, 2016.

Respectfully submitted,

*s/ Colin Fieman*
*s/ Miriam Schwartz*
Assistant Federal Public Defenders
Counsel for Darrel Dwight

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 10

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties registered with the CM/ECF system.

s/ *Amy Strickling*
Paralegal
Federal Public Defender

MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE
(*United States v. Dwight*, CR15-5430 BHS) - 11

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**